```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                       ATHENS DIVISION
```

PATRICE and RUFUS ADDISON,           *
Individually and as Natural
Guardians and Next Friends of        *
C.N.A., Their Minor Child,
                                     *
        Plaintiffs,
                                     *
vs.                                            CASE NO. 3:06-CV-05 (CDL)
                                     *
CLARKE COUNTY BOARD OF
EDUCATION,                           *

        Defendant.                   *

O R D E R

In the above-captioned action, Plaintiffs Patrice and Rufus Addison sued Defendant Clarke County Board of Education to recover for the harm to their minor daughter, C.N.A., arising from alleged instances of student-on-student sexual harassment. Plaintiffs contend that C.N.A. suffered severe and pervasive harm as a result of harassment by a fellow student, and that Defendant exhibited deliberate indifference toward their daughter's abuse. Plaintiffs assert claims under 42 U.S.C. § 1983 and the Fourteenth Amendment and under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. They also assert a state law claim for intentional infliction of emotional distress. Presently pending before the Court is

Defendant's Motion for Summary Judgment (Doc. 23). For the following reasons, the Court grants Defendant's motion.[1]

BACKGROUND

At the time of the incidents in question, Plaintiff C.N.A. was enrolled as a special needs student at Hilsman Middle School in Athens, Georgia. C.N.A. rode the bus with other special needs children to and from school every day. On or about January 22, 2004,[2] C.N.A. was riding the bus home from school when S.W., a fellow student, moved to her seat and "proceeded to attempt to kiss and fondle [] C.N.A. against her will." (Compl. ¶ 6.) C.N.A.'s cries of protest alerted the bus driver, Vivian Von Smith ("Smith"), who observed S.W. hitting C.N.A. on the top of her head. Smith immediately pulled the bus to the side of the road and radioed to dispatch. S.W. was removed to another bus, and Smith took C.N.A. home. At the end of her route, Smith filled out a Bus Conduct Report, which she provided to the school office, and requested that her supervisor assign a driver's aide to accompany her the following morning.

---

[1] In light of its decision on summary judgment, the Court denies Plaintiffs' Motion to Amend Complaint (Doc. 28) as moot.

[2] Although Plaintiffs' Complaint alleges that the first instance of sexual harassment occurred on January 21, 2004, both of the parties' briefs indicate that this first incident of harassment occurred on the afternoon of January 22, 2004. Additionally, the Bus Conduct Report of this incident reflects the date as January 22, 2004. (*See* Smith Dep. Ex. 1, Aug. 30, 2005.)

2

When C.N.A. arrived home from school that afternoon, she told her mother, Patrice, that she wanted to take a bath. Patrice noticed some bruising near C.N.A.'s chest, and asked C.N.A. why she was taking a bath. Although C.N.A. did not respond to her mother's questioning, she told her parents later that evening that S.W. "jumped on her and [] was trying to kiss her." (R. Addison Dep. 22:5-6, Sept. 19, 2006; *see also* P. Addison Dep. 8:16-17, Sept. 19, 2006.) C.N.A.'s father believed that she "was telling [] an imaginary story" as part of her disability.[3] (R. Addison Dep. 22:12-23:5.) Patrice noticed that C.N.A. "was fussing" about her twin brother being in her room that evening, which "was kind of unusual because [it] was her routine for them to [] hang out." (P. Addison Dep. 9:23-25.) C.N.A. did not appear upset the next morning, however, and got on the bus as usual.

On January 23, 2004, pursuant to Smith's request, Marilyn Gary ("Gary") was on the bus to monitor S.W. and "see what's going on[.]" (Gary Dep. 32:23, Sept. 19, 2005.) As C.N.A. boarded, Gary observed S.W. "move [his] legs so that she could get by, and in part of her going by, he [] tap[ped] her on the rump." (*Id.* at 53:10-12.) Gary asked S.W. why he had touched C.N.A., and S.W. replied that "he just felt like doing it." (*Id.* at 53:18.) C.N.A. moved to a seat in the

---

[3] C.N.A. is an autistic child who also suffers from a condition known as echolalia. This condition causes C.N.A. to repeat things she hears on television as if they were things that she, herself, experienced. (*See* P. Addison Dep. 9:8-10; R. Addison Dep. 22:14-17.)

3

rear of the bus, and Smith continued her route.  As Smith turned back onto the main road, however, S.W. "flipped the script" and "headed over the seat to get towards [C.N.A.]"  (*Id.* at 54:1-3.)  S.W. also began yelling that he wanted to rape C.N.A.  (*Id.* at 54:19.)  Gary restrained S.W. to prevent him from reaching C.N.A., and Smith pulled the bus into a nearby parking lot, radioed for assistance, and called 911.  After C.N.A. was removed to another bus and taken to school, the local police removed S.W. from Smith's bus.

Plaintiffs first learned of these events later that morning. Concerned for C.N.A., Smith visited the Addison home and informed Plaintiffs of their daughter's encounters with S.W.  That afternoon, Plaintiffs met with the assistant principal of Hilsman Middle School, Sam Preston ("Preston").[4]  Preston informed Plaintiffs that "he was going to change [S.W.]'s bus and that they would monitor him in the halls at school."  (*Id.* at 23:19-21.)  S.W. received a one-week suspension from school as a result of his behavior toward C.N.A. Before he was allowed to return, the school administration implemented a plan by which C.N.A. and S.W. would be separated during school hours.  The plan called "for [S.W.] to ride a bus by himself . . . accompanied by a staff member" and to have "an adult member of the school personnel with [S.W.] at all times" during the school day. (Preston Dep. 26:5-7, 27:4-7.)

---

[4] Preston was not aware of the problems between S.W. and C.N.A. until Smith asked to speak with him on the morning of the second incident. (*See* Preston Dep. 21:19-22:7, Aug. 30, 2005.)

4

The events between S.W. and C.N.A. were not the first reported incidents of S.W.'s inappropriate behavior. In late 2003, S.W.'s teacher began to notice "out-of-seat" behavior, meaning that S.W. would "sharpen his pencil five or six times during one hour in order to . . . [be able to] speak to somebody on his way back to his desk[.]" (Scott Dep. 18:12-15, Sept. 19, 2006.) He then progressed to "[v]erbal threats, [like] 'Leave me alone,' 'I'm going to hit you.'" (*Id.* at 18:21-22.) In November 2003, S.W.'s teacher witnessed an altercation between S.W. and one of his classmates. According to the teacher, "It initiated on the bus and both individuals came out into the grass, which was outside of the classroom, . . ." (*Id.* at 30:23-25.) Although the teacher did not witness any physical contact between the boys, Preston recalls that they "were picking at each other and . . . needed to be separated." (Preston Dep. 20:5-6.) In response to his behavioral problems, S.W.'s teacher frequently moved him away from his classmates and restricted his access to certain areas of the classroom.[5]

---

[5]In addition to the two instances of harassment Plaintiffs allege C.N.A. endured on the school bus, they contend that a third incident occurred in which S.W. attempted to push C.N.A. into a bathroom at school. When asked in their depositions, neither of C.N.A.'s parents could recall any specific facts about this alleged altercation. Rufus stated that he "[C]an't recall the information[, that he] know[s] [he] heard of something about that, but [] can't recall the information, what happened, what [he] heard." (R. Addison Dep. 44:8-10.) Patrice, C.N.A.'s mother, stated that Preston was the one who informed Plaintiffs about this alleged incident, and Preston recalls "that there was a discussion at some point about the bathroom, . . . about an event that [he] had not had any knowledge of prior to [January 23, 2004.]" (Preston Dep. 42:1-3.) The record contains nothing more than speculation that (1) this altercation ever took place and (2) it occurred *after* the events of which Preston had notice on

5

On January 20, 2006, Plaintiffs filed this action asserting claims against Defendant for alleged violations of the Fourteenth Amendment and Title IX. Specifically, Plaintiffs allege that Defendant "failed to enforce a policy and practice of training individuals . . . to prevent [] sexual assaults, to adequately monitor contact between students to insure that sexual assaults did not occur, to enforce a policy and practice which would allow for the receipt and proper investigation of complaints relating to sexual assaults of students, and similarly failed to take sufficient measures to mitigate the harm caused by sexual assaults." (Compl. ¶ 14.) Defendant now seeks summary judgment on each of Plaintiffs' claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to

---

January 23, 2004. Construing the evidence in Plaintiffs' favor, the Court will assume that, at some point prior to January 23, 2004, S.W. *might* have tried to push C.N.A. into a bathroom on school grounds.

6

"establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial. *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court may draw inferences from undisputed facts. The Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draws all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

DISCUSSION

**I. Title IX Claim**

7

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Supreme Court has recognized an implied private right of action in cases involving intentional sexual discrimination.  *Franklin v. Gwinnett County Public Schls.*, 503 U.S. 60, 65 (1992).  The Court has also found that, in limited circumstances, student-on-student harassment constitutes actionable discrimination for the purposes of Title IX.  *See generally Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629 (1999).

In order for a plaintiff to recover for student-on-student harassment under Title IX, he must establish that the funding recipient was "deliberately indifferent to sexual harassment, of which [it had] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  *Id.* at 650.  Here, Plaintiffs contend that Defendant violated Title IX because (1) it was deliberately indifferent to the threat S.W. posed to their daughter,[6] and (2) this indifference

---

[6] The *Davis* Court specifically limited the potential for damages liability to *known* sexual harassment.  With respect to the issue of whether Defendant had actual knowledge of the events between S.W. and C.N.A., it is not clear that the admitted knowledge of Smith, Gary, and Preston may be imputed to Defendant.  In *Hawkins v. Sarasota County School Bd.*, 322 F.3d 1279 (11th Cir. 2003), the Eleventh Circuit declined to decide, in the context of student-on-student harassment, "whether notice

8

ultimately deprived C.N.A. of access "to the educational opportunities or benefits provided by the school." If the Court finds that Plaintiffs failed to satisfy their burden to create a jury question on either of these issues, Defendant is entitled to summary judgment on the Title IX claim.

In *Davis*, the Supreme Court made clear that "funding recipients are deemed 'deliberately indifferent' . . . only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "[T]he relevant inquiry is not whether the measures taken were effective in stopping discrimination, but whether [Defendant]'s actions amounted to deliberate indifference." *Sauls v. Pierce County*

---

to a teacher constitutes actual knowledge on the part of a school board[.]" *Id.* at 1286. Since "[t]he deliberate indifference issue is intertwined with the question of notice[,]" the *Hawkins* court "refrain[ed] from answering the notice and deliberate indifference issues . . . and rest[ed] [the] opinion on the denial of access issue." *Id.* at 1287-88. In this case, the issue is whether notice to various transportation personnel and a school's assistant principal constitutes actual knowledge on the part of Defendant. Like the court in *Hawkins*, this Court will refrain from deciding this issue, particularly in light of the fact that Plaintiffs admit that they named the wrong Defendant. However, the Office of Civil Rights of the U.S. Department of Education ("OCR") "continues to assert that . . . a school has notice if a responsible employee knew, or in the exercise of care should have known of the harassment." *Id.* at 1287 n.9. For purposes of notice, the term "responsible employee" includes "any employee who has authority to take action to redress the harassment, who has the duty to report to appropriate school officials sexual harassment or any other misconduct by students or employees, or an individual who a student could reasonably believe has this authority or responsibility." *Id.* (internal quotation marks omitted). Accordingly, for purposes of the present motion, the Court will assume in Plaintiffs' favor that Defendant had actual knowledge of S.W.'s harassment by virtue of the fact that various of its "responsible employees" concede such knowledge.

9

*School Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (internal citation omitted). Therefore, it is Plaintiffs' burden to show that Defendant's response to their daughter's harassment was clearly unreasonable in light of the circumstances of which Defendant was aware at the time the harassment occurred. Plaintiffs concede that "[f]ollowing the first attack, the school administration did take measures to prevent harassment between S.W. and C.N.A." (Pls.' Br. Supp. Resp. To Def.'s Mot. Summ. J. 9.) Thus, the issue is not whether it was reasonable for Defendant *not* to respond to S.W.'s alleged harassment, but whether the response provided was reasonable under the known circumstances.

Having reviewed the evidence, the Court finds that Plaintiffs have failed to create a jury question on the issue of Defendant's deliberate indifference, and that Defendant is entitled to summary judgment. In *Davis*, the Supreme Court expressly rejected the notion that "victims of peer harassment now have a Title IX right to make particular remedial demands[,]" and directed that lower courts "should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Using *Davis* as the guide, it would be error to characterize Defendant's response to the alleged harassment as clearly unreasonable. First, even if the Court assumes that Defendant had actual knowledge of S.W.'s pattern of inappropriate behavior toward other students, there is nothing to indicate that Defendant, prior to January 22, 2004, had actual

10

knowledge that S.W. posed a threat to C.N.A. Whatever Defendant's response to S.W.'s prior instances of inappropriate conduct, Plaintiffs do not contend that these prior instances ever affected their daughter, or that she was even aware of this earlier behavior. Second, it is clear that Defendant's response was *not* clearly unreasonable once it became aware that S.W. was harassing C.N.A. On the afternoon of January 22, Smith stopped the bus, separated the students, filed a written report of the incident, and asked her supervisor to assign a bus monitor the following morning. After the second incident, Smith and Gary called the police, Smith spoke with the assistant principal, and S.W. received a one-week suspension from school. Additionally, S.W. was permanently removed from C.N.A.'s school bus and was monitored continuously throughout the school day. Despite Plaintiffs' contention that S.W. again harassed C.N.A. at some point after January 23, 2004, the evidence does not support this allegation. Although Plaintiffs may have preferred that Defendant respond differently to the situation involving C.N.A., they do not "have a Title IX right to make particular remedial demands[,]" and it simply is not the case that "nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability" under Title IX. *Davis*, 526 U.S. at 648. The overwhelming evidence shows that C.N.A. had to endure two episodes of S.W.'s harassment in less than twenty-four hours. While the Court does not make light of her situation, the

11

fact remains that C.N.A. has continued to attend school, and, according to her father, "If there were any type of negativity that will come towards [C.N.A.], she knows how to handle it." (R. Addison Dep. 66:3-4.) Under these circumstances, a jury could not reasonably conclude that Defendant acted with deliberate indifference to the sexual harassment suffered by C.N.A. Plaintiffs have failed to establish that, under the known set of circumstances, the response to S.W.'s behavior was clearly unreasonable. Defendant is entitled to summary judgment on the Title IX claim.

## II. Fourteenth Amendment Claim

It is well established that "the deliberate indifference standard applies in § 1983 claims alleging a municipality is liable for its failure to prevent a deprivation of federal rights." *Sauls*, 399 F.3d at 1288 (internal citations omitted). Since the Court has determined that Plaintiffs failed to create a jury question on the issue of whether Defendant acted with deliberate indifference, Defendant is entitled to summary judgment on the Fourteenth Amendment claim asserted pursuant to 42 U.S.C. § 1983.

## CONCLUSION

The Court finds that no genuine issues of material fact exist to be tried regarding Defendant's alleged deliberate indifference to the harassment of C.N.A., and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary

Judgment (Doc. 23) is granted as to Plaintiffs' Title IX and 42 U.S.C. § 1983 claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim, which is hereby dismissed without prejudice.

IT IS SO ORDERED, this 30th day of July, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE